Sterling Myers Ford Sales, Inc., Plaintiff-Appellant, v. Robert Francis Brown, Defendant-Appellee.—(The Rowmen Company, Inc., Defendant.)

(No. 75-79; ▮▮▮▮▮▮▮▮▮

Third District—November 14, 1975.

Thomas, Kostantacos & Traum, of Rockford (Kenneth Traum, of counsel), for appellant.

Bull, Ludens, Potter & Coplan, of Morrison (Mason Bull, of counsel), for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This appeal stems from the order of the circuit court of Whiteside County which, pursuant to a petition filed under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 72), vacated a default judgment entered against the defendant, Robert Francis Brown.

The record discloses that on April 2, 1971, the plaintiff, Sterling Myers Ford Sales, Inc., filed a two-count complaint against the defendant for damages to its buildings and automobiles. Count One alleged various breaches of contract by the defendant, an architect, who purportedly agreed to furnish certain architectural services in connection with the construction of an automobile sales and service facility on land owned

by the plaintiff. Count Two alleged professional errors and omissions as an architect, or negligent performance of architectural duties on the part of defendant.

On July 11, 1972, plaintiff moved for summary judgment by default. After a hearing, this motion was granted and judgment was entered against the defendant in the amount of $72,174.44.

The plaintiff also joined the Rowmen Co., Inc., which was served with process, and for which an appearance was made. No judgment was entered against the Rowmen Co., and it is not a party to this appeal.

On October 10, 1972, the defendant was served with a citation to discover assets. On November 3, 1972, defendant, through his attorney, filed a petition, together with supporting affidavits, to vacate the judgment, pursuant to section 72 of the Civil Practice Act. Ill. Rev. Stat. 1973, ch. 110, par. 72.

The petition alleged that the damages, for which judgment had previously been entered, were not the proximate result of any breach of contract or negligence on the part of defendant, but instead were caused by an act of God. In addition, the defendant alleged that he first learned of the judgment on October 10, 1972, when he was served with the citation to discover assets. The petition further alleged that on October 17, 1972, defendant learned he had been defaulted and that no appearance or defense had been made for him. The defendant alleged that on October 18, 1972, all correspondence in the files of the Rowmen Co. (the other defendant against whom the plaintiff sought relief) relative to the present action, was forwarded to his attorney. Finally, the reasons defendant did not earlier know of the judgment were set forth in two accompanying affidavits.

In his affidavit, defendant asserted that he is the President of the Rowmen Co., a corporation engaged in the construction business and in furnishing architectural services; that as an employee of the Rowmen Co., he furnished its architectural services; that he has no office or business separate and apart from the office of the Rowmen Co.; that the Rowmen Co. purchases its insurance from Stewart-Keator-Kessberger & Lederer, Inc. (hereafter Stewart-Keator), its account being handled by Henry Merker, vice-president of Stewart-Keator; that Stewart-Keator countersigned and delivered, as agent of United States Fidelity and Guaranty Company (hereafter referred to as the Insurance Company), the Insurance Company's comprehensive general liability policy insuring the Rowmen Co., effective April 24, 1970, against claims arising from construction operations and agreeing to assume the defense of litigation arising under the terms of such policy; that sometime between August 3,

1970, and August 11, 1970, the Rowmen Co. received four letters dated July 30, 1970, also attached to the petition, which were delivered by the Rowmen Co. to Stewart-Keator; that on April 27, 1971, the Rowmen Co. received copies of the summons and complaint from the plaintiff's action which were delivered to Stewart-Keator; that defendant was informed by Henry Merker that the defendants need do nothing since the Insurance Company would take care of the matter; that on July 13, 1971, the Rowmen Co. delivered to Stewart-Keator another summons and a copy of an unsigned order, both of which were received by the Rowmen Co. on July 12, 1971; that the Rowmen Co. was again advised by Henry Merker that the defendants need do nothing, since the Insurance Company would take care of the matter; that on October 10 or 11, 1972, the defendant received at his home a citation to discover assets which was delivered to Stewart-Keator, and again Henry Merker advised the defendants that the Insurance Company would take care of it; that on October 17, 1972, the defendant was notified by Henry Merker that the Insurance Company had not been, and was not presently, arranging for the defense of this defendant, and that defendant must arrange for his own defense. Defendant asserted that this was the first time he learned no appearance or defense had been made on his behalf.

The record discloses that the Insurance Comany did not undertake the defense of Brown because he had no policy including coverage against professional errors and omissions as an architect.

In his affidavit, Henry Merker asserted, among other things, that as vice-president of Stewart-Keator, he received various documents from the Rowmen Co., in connection with the plaintiff's action, and that on each occasion he informed the defendants they need do nothing since the Insurance Company would take care of the matter. The affiant further alleged that on October 17, 1972, after the citation to discover assets was received by him, one George Ashmore, claim supervisor of the Insurance Company's Chicago offices, advised him the Insurance Company had not been, and was not presently, appearing and defending on behalf of the defendant. It was further alleged that this was the first notification that Stewart-Keator had received from the Insurance Company concerning the fact that it had not undertaken the defense of Robert Francis Brown. On the same day, Merker alleged that he notified the Rowmen Co. and Robert Francis Brown of the fact that the Insurance Company had not arranged for the defense of Brown and that Brown must arrange for his own defense.

The plaintiff moved to dismiss the defendant's petition. This motion was denied. After a trial upon the section 72 petition, the plaintiff's motion to dismiss the petition to vacate judgment was denied and the

judgment was vacated, with the defendant being given 14 days to file his answer to the complaint, so that the case could be heard on the merits. The trial judge found that the affidavits accompanying the defendant's petition set forth sufficient facts to state a meritorious defense. The trial judge also determined that defendant had exercised due diligence in protecting his rights:

> "I am convinced that the defendant did what the average man would do (even a college graduate) and that is he took the summons to his insurance agent who in turn delivered it over to the insurance company. Brown was not informed that there would be no defense made on his behalf individually. His failure to read the complaint or interpret it as a separate suit against him is not uncommon and various counts set forth in a complaint are often confusing to the layman. But when the citation to discover assets was served on him after the default was taken, he was then informed that no defense had been made on his behalf and at that time he hired counsel and the motion to set aside the judgment was immediately filed."

The only issue presented is whether the trial court erred in granting defendant's petition to vacate the default judgment under section 72 of the Civil Practice Act. Ill. Rev. Stat. 1973, ch. 110, par. 72.

■■ A defendant seeking to vacate an order of default under section 72 must present to the trial court a meritorious defense and a reasonable excuse for not having made a defense in due time. Since the decision in *Ellman v. De Ruiter*, 412 Ill. 285, 106 N.E.2d 350, it is well settled that a section 72 petition "invokes the equitable powers of the court, as justice and fairness require, to the end that one may not enforce a default judgment attended by unfair, unjust or unconscionable circumstances." (*Elfman v. Evanston Bus Company*, 27 Ill.2d 609, 613, 190 N.E.2d 348.) Only when the reviewing court is convinced that the trial court has abused its discretion will the judgment be reversed. *Calvo v. Willson*, 59 Ill.App.2d 399, 207 N.E.2d 496.

In the case at bar we believe that defendant's defense of an act of God, if established at a trial on the merits, would preclude a finding that plaintiff's damages were proximately caused by defendant's acts or omissions. Under these circumstances we believe that the defendant has set forth sufficient facts to constitute a meritorious defense. As to whether defendant exercised due diligence, we believe the trial court did not abuse its discretion in finding that defendant properly protected his rights and was not negligent. We note that plaintiff has relied upon various authorities to support its contention that defendant did not exercise reasonable diligence, but inasmuch as these cases predate *Elfman*, they are not

controlling. *Stehman v. Reichhold Chemicals, Inc.*, 57 Ill.App.2d 40, 206 N.E.2d 299.

■■ In its brief the plaintiff has urged that the default judgment was not attended by fraudulent, unfair, unjust or unconscionable conduct. An examination of defendant's section 72 petition reveals that no such charge was made. We note however that it was not until 60 days after the entry of the default judgment that the citation to discover assets was issued and served on the defendant. Although not completely controlling or conclusive, delay in executing on a default judgment until more than 30 days after its entry may cast a cloud on the proceedings. *Elfman v. Evanston Bus Company*, 27 Ill.2d 609, 190 N.E.2d 348.

The trial court acted properly and in the interest of fairness and justice when it vacated the default judgment and ordered the case to proceed to trial on the merits. For the foregoing reasons the order of the circuit court of Whiteside County is affirmed.

Affirmed.

ALLOY and BARRY, JJ., concur.